**The CAPITOL CAKE COMPANY**

v.

**LLOYD'S UNDERWRITERS et al.**

**Civ. A. No. M–78–627.**

United States District Court,
D. Maryland.

June 27, 1978.

Edmund P. Dandridge, Jr., and Arnold B. Dompieri, Venable, Baetjer & Howard, Baltimore, Md., for plaintiff.

David R. Owen and Peter G. Ashman, Semmes, Bowen & Semmes, Baltimore, Md., for Cledwyn H. C. Ford and Lloyd's Underwriters.

Edward C. Mackie, Baltimore, Md., for Maislin Transport of Delaware, Inc.

Edwin T. Steffy, Jr., and John C. Griffin, Baltimore, Md., for Donald K. Bollhorst t/a Anchor International.

William J. Evans, Baltimore, Md., for Maryland National Bank.

## MEMORANDUM

JAMES R. MILLER, Jr., District Judge.

In state court, the plaintiff Capitol Cake Company, a fruit cake baker, sought to recover approximately $60,000 lost when raisins purchased "C.I.F." [1] from a seller on Crete were rejected for entry in to the United States by the U. S. Department of Agriculture. The plaintiff alleges in Counts I and II that Lloyd's Underwriters and Cledwyn Ford, a representative of "Syndicate 710" (hereinafter Lloyd's), failed to pay the loss under a policy covering "rejection risks by the U. S. Food and Drug Administration and U. S. Agricultural Dept." In counts III–VII and IX–X, the plaintiff alleges that defendants Donald K. Bollhorst, a customhouse broker, Maislin Transport of Delaware, Inc., a common carrier in bond, and Maryland National Bank breached contractual, statutory, and common law duties, thereby causing the plaintiff's letter of credit issued by the Bank to be debited notwithstanding the lack of a

---

1. "C.I.F." means that the price includes the cost of the goods, and the insurance and freight to the named destination. Maryland Uniform Commercial Code § 2–320, *Md.Ann.Code,* Comm.L. Art. (1975).

valid Department of Agriculture certificate of inspection.[2]

Defendants Lloyd's and Ford, filed a petition for removal stating, in relevant part, that original jurisdiction in the U. S. District Court existed between plaintiff Capitol Cake, a Maryland Corporation, and Ford (treated for the purpose of this decision as synonymous with Lloyd's), a subject of the United Kingdom, 28 U.S.C. § 1332(a)(2) and (3), and that the claim against Lloyd's is a separate and independent claim from the claims against the other defendants and is therefore removable under 28 U.S.C. § 1441(c).[3] Plaintiff then filed the pending motion for remand.

In determining whether the claim against Lloyd's is "a separate and independent claim or cause of action" within the meaning of § 1441(c), this court must apply the teachings of *American Fire and Casualty Co. v. Finn,* 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951). In *Finn,* the Court reviewed the legislative history of the statute and explained:

> "The Congress, in the revision, carried out its purpose to abridge the right of removal. Under the former provision, 28 U.S.C. (1946 ed.) § 71, separable controversies authorized removal of the suit. 'Controversy' had long been associated in legal thinking with 'case.' It covered all disputes that might come before federal courts for adjudication. In § 71 the removable 'controversy' was interpreted as any possible separate suit that a litigant might properly bring in a federal court so long as it was wholly between citizens of different states. So, before the revision, when a suit in a state court had such a separable federally cognizable controversy, the entire suit might be removed to the federal court.

> "A separable controversy is no longer an adequate ground for removal unless it also constitutes a separate and independent claim or cause of action. Compare *Barney v. Latham,* 103 U.S. 205, 212 [26 L.Ed. 514,] with the revised § 1441. Congress has authorized removal now under § 1441(c) only when there is a separate and independent claim or cause of action. Of course, 'separate cause of action' restricts removal more than 'separable controversy.' In a suit covering multiple parties or issues based on a single claim, there may be only one cause of action and yet be separable controversies. The addition of the word 'independent' gives emphasis to congressional intention to require more complete disassociation between the federally cognizable proceedings and those cognizable only in state courts before allowing removal."

*Id.* 10–12, 71 S.Ct. at 538–539. (footnotes omitted). Following this discussion, the Court's application of the "separate and independent claim or cause of action" standard to the facts in *Finn* illustrated the need to examine a claim to ascertain whether it was both separate and independent. In *Finn,* removal was held improper where relief for the single wrong of a failure to pay for the property lost by fire was demanded alternatively from one alleged insurer on its policy, or from another alleged insurer on its policy, or from the insurance agent and both insurers for the failure to notify plaintiff of a policy cancellation. The court summarized the relationship among the claims:

> "The facts in each portion of the complaint involve Reiss [the agent], the damage comes from a single incident. The allegations in which Reiss is a defendant involve substantially the same facts and transactions as do the allegations in the

---

**2.** Count VIII alleges that Bollhorst wrongfully retained customs duties previously paid on the rejected raisins.

**3.** 28 U.S.C. § 1441(c) provides:

"(c) Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction."

first portion of the complaint against the foreign insurance companies. It cannot be said that there are separate and independent claims for relief as § 1441(c) requires."

*Id.* 16, 71 S.Ct. at 541. The Court's conclusion was that:

"where there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under § 1441(c)."

*Id.* 14, 71 S.Ct. at 540 (footnote omitted).

Plaintiff and defendant urge this court to follow two different lines of court decisions applying the § 1441(c) "separate and independent" standard to efforts to invoke federal removal jurisdiction. In the plaintiff's cases, the courts concluded that no separate and independent claim or cause of action existed when a plaintiff sued a wrongdoer and an insurer writing a policy covering the specific wrong. *Clarence E. Morris, Inc. v. Vitek,* 412 F.2d 1174 (9th Cir. 1969) (claim against principal and surety for wrongful attachment); *Fair Oaks Transportation Co. v. Central Manufacturers' Mutual Ins. Co.,* 127 F.Supp. 507 (S.D.N.Y.1954) (claim against parking lot operator for disappearance of tractor and trailer and against tractor-trailer insurer on policy). These cases are, however, distinguishable. Although the plaintiff raisin purchaser here has allegedly been wronged by the bank's payment against the plaintiff's letter of credit without possession of the required documents, by the common carrier's delivery of the raisins out of bond without possession of the required certificate of inspection, and by the customhouse broker's erroneous assurance of possession of the required certificate, the plaintiff does not allege insurance coverage against the wrongs by the bank, the common carrier, or the customhouse broker; instead, the plaintiff alleges insurance against loss from "rejection risks by the U. S. Food and Drug Administration and U. S. Agricultural Dept." (The terms of such coverage are not further disclosed in the record.)

In the defendant's cases, the courts concluded that a separate and independent claim existed where a plaintiff insured sued three insurers under different policies for their *pro rata* share of the single loss against which the plaintiff was insured. *Baltimore Gas and Electric Co. v. U. S. F. G.,* 159 F.Supp. 738 (D.Md.1958); *Kornegary v. Hardware Mut. Fire Ins. Co.,* 106 F.Supp. 347 (E.D.N.C.1952). *But see 1A Moore's Federal Practice* ¶ o.163[4–5], at 267 n. 14 (1974 ed.); *citing* "many well reasoned" and more recent decisions reaching a contrary result. Whatever the merits of these divergent cases, they are also distinguishable. This is not a case where a *pro rata* recovery for an unremarkable fire or other loss is sought from different insurers under separate contracts. Here, the plaintiff American raisin purchaser claims to be the beneficiary of an insurance policy providing rejection risks coverage that was sold by Lloyd's to the raisin seller in Crete as part of a C.I.F. sales contract as to which the allegedly negligent or otherwise culpable letter of credit issuer, common carrier and customhouse broker caused a $60,000 loss, resulting from the rejection of the raisins for entry, to be imposed on the raisin purchaser.

The plaintiff purchaser contends that the loss caused by the rejection of the raisins was improperly visited upon him, rather than on the raisin seller or the rejection risk insurer, due to the fact that the terms of the letter of credit, requiring a valid inspection certificate before payment is made, were not observed.

The parties have not offered, nor has the court found, a case deciding whether the "separate and independent claim or cause of action" requirement of 28 U.S.C. § 1441(c) as construed by *Finn,* is satisfied by a claim on an insurance policy required by a C.I.F. sales contract or by the terms of a bank letter of credit. Doubtlessly the liability, if any, of the insurer will arise from its policy, a contractual duty separate and distinct from the contractual, statutory, and common law duties of the customhouse broker, the common carrier, and the credit issuing

bank.[4] The question then is whether a claim on the insurance policy required here by a C.I.F. sales contract or by a bank letter of credit is "independent", § 1441(c), or disassociated, *Finn, supra,* from the claims cognizable in the state court or whether, in contrast, the claims arise from "an interlocked series of transactions," *Finn, supra.*

▮▮ The facts disclosed by the record in this case[5] do not establish that defendant Lloyd's rejection risks insurance is independent or disassociated from the C.I.F. sales contract or the letter of credit agreement. An essential term of a C.I.F. contract is the seller's obligation to obtain a policy of insurance of a kind and on terms then current at the port of shipment. *See* Md. U.C.C. § 2–320(2)(c), *Md.Comm.L. Code Ann.* (1975).[6] The initial scope of the rejection risks insured against may turn on the kind and terms of insurance available for transactions of the type underlying this case. Furthermore, compliance with conditions precedent to the effectiveness of the rejection risks coverage may turn on faithful performance by the seller, the buyer, and their agents. Finally, the damages recoverable under the rejection risks coverage may turn on whether the $60,000 lost here is a loss resulting from the "rejection risks by the U. S. Food and Drug Administration and the U. S. Agricultural Dept." or a loss resulting from the uninsured negligence or breach of contract or statute by the credit issuing bank, the customhouse broker, or the common carrier. In all these respects, the initial scope of the rejection risks coverage, the compliance with conditions precedent to coverage, and the damages for a loss resulting from a rejection risk, the liability of defendant insurer may turn on the related interdependent actions and duties of the parties to this transaction. On the facts disclosed in this record[7], the plaintiff raisin buyer's claim on defendant Lloyd's rejection risks insurance arises from an interlocked series of transactions governed by the C.I.F. sales contract, the letter of credit agreement, and the obligations of the customhouse broker and the common carrier. The claim, therefore, is not a separate and independent claim or cause of action under § 1441(c). *See Finn, supra.*

▮ Although defendant Maislin Transport of Delaware, Inc., has not filed a petition for removal, it now argues that plaintiff's counts IX and X state a claim arising under 7 U.S.C. § 608e–1, 7 C.F.R. § 999.300, and 19 C.F.R. § 18, 12(d), that the claims against it are removable under 28 U.S.C. § 1441(b) and (c), and that even if the claim against Lloyd's is not removable, the claim against Maislin is not subject to remand. If this court had jurisdiction over this case under § 1441(c) resulting from defendant Lloyd's petition for removal, defendant Maislin's argument would weigh heavily in this court's determination as to whether to remand "all matters not otherwise within

---

**4.** In *Snow v. Powell,* 189 F.2d 172 (10th Cir. 1951) (en banc), the court after *Finn,* wrote:

"The critical words 'separate' and 'independent' are used in the conjunctive and should be given their full significance in order to carry out the intent and purpose of Congress to limit removals and to simplify the determination of removability.

"The word 'separate' means distinct; apart from; not united or associated. The word 'independent' means not resting on something else for support; self-sustaining; not contingent or conditioned."

*Id.* 174 (footnote omitted). *Accord, Simon v. Gulf Coast Rental Tool Service, Inc.,* 408 F.Supp. 911, 914 (N.D.Tex.1876); *Henry Kraft Mercantile Co. v. Hartford Acc. & Indem. Co.,* 107 F.Supp. 505, 507 (W.D.Mo.1952).

**5.** In practice federal courts consider the facts disclosed on the record as a whole. 14 C.

Wright, A. Miller, E. Cooper, *Federal Practice and Procedure* § 3734, at 738 (1976) (collecting cases).

**6.** No opinion is expressed on whether the Maryland U.C.C., the Uniform Customs and Practices for Documentary Credits of the International Chamber of Commerce (1974 Rev.), or other authority control in the event of inconsistent provisions.

**7.** The burden is on the defendant petitioning for removal to establish the facts justifying removal jurisdiction. *See* 28 U.S.C. § 1446; *Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 42 S.Ct. 35, 66 L.Ed. 144 (1921); 14 C. Wright, A. Miller, E. Cooper, *Federal Practice and Procedure* § 3721, at 530 n. 65 (1976) (collecting cases).

its original jurisdiction" under § 1441(c). However, jurisdiction over this case does not result from defendant Lloyd's petition for removal based on 28 U.S.C. §§ 1441(c), 1332(a)(2) and (3). Thus, since Maislin has not itself filed a timely petition containing a short and plain statement of the federal grounds of removal, *see* § 1446, and since new grounds may not be added after expiration of the thirty day period of seeking removal, 14 C. Wright, A. Miller, E. Cooper, *Federal Practice and Procedure* § 3733, at 734 (1976) (collecting cases), the question of jurisdiction argued by Maislin has not properly been presented to this court.

For these reasons, judgment will be entered remanding this case to state court since it appears that the case was removed improvidently and without jurisdiction. § 1447(c).

Since the question of removability was close and novel, no award of costs pursuant to 28 U.S.C. § 1447(c) is warranted. *See, e. g., Dunkin Donuts of American v. Family Enterprises, Inc.,* 381 F.Supp. 371 (D.Md.1974); 14 C. Wright, A. Miller, E. Cooper, *Federal Practice and Procedure* § 3739, at 764 (1976).

The court has concluded that no hearing is necessary on the motion to remand, Local Rule 6.