The TRAVELERS INDEMNITY COMPANY, a corporation, et al., Plaintiffs,

v.

Walter BOLES, Defendant.

No. C–80–0270 SW.

United States District Court,
N. D. California.

Dec. 9, 1980.

**180**

Stanley L. Gibson, Richard C. Wootton, Derby, Cook, Quinby & Tweedt, San Francisco, Cal., for plaintiffs Travelers Indemnity Co. and Insurance Company of North America.

David C. Phillips, Samuel D. Davis, Goldstein & Phillips, A Professional Corp., San Francisco, Cal., for Walter Boles.

James E. Martin, San Francisco, Cal., for defendant Brookings Harbor Insurance.

## MEMORANDUM OF DECISION RE ORDER OF DISMISSAL AND ORDER DISMISSING ACTION WITHOUT PREJUDICE

SPENCER WILLIAMS, District Judge.

This case presents troubling procedural and jurisdictional questions which the court resolved following a hearing on April 22, 1980 by granting defendant Boles's motion to dismiss. The purpose of this brief memorandum is to set forth in writing the reasons why dismissal was deemed appropriate.

Plaintiffs, two insurance companies ("the companies"), issued Boles a policy of insurance covering his fishing vessel, the LORA BEE. On December 5, 1979, the LORA BEE was lost on rocks at Pt. Reyes, California. Boles filed a claim with the companies alleging their policy covered his vessel at the time of its loss, but they refused to pay the claim charging that Boles had breached the warranty contained in the insurance policy. On February 4, 1980 the companies filed the instant action seeking a declaration that they are not liable to Boles under their policy. The action was denominated an admiralty-maritime claim under Rule 9(h) of the Federal Rules of Civil Procedure.[1]

On February 7, 1980, prior to service of the complaint in the present case, Boles filed his own action in state court against the companies and another party alleging breach of the insurance contract, fraud and negligence in connection with the salvage of the LORA BEE, conversion of the vessel, breach of the covenant of good faith and fair dealing, breach of California Insurance Code § 790.03(h), deceit, and intentional infliction of emotional distress. The state court action was removed to this court by the companies on the ground of diversity of citizenship, but at the April 22, 1980 hearing this court ordered the case remanded for failure of the third defendant named in the state action to join in the petition for removal.

Boles's motion to stay or to dismiss was based on the existence of the state court action concerning the same issues. He argued this court has discretion to decline to exercise jurisdiction under the circumstances of this case. The companies contended the court had no discretion to decline to exercise jurisdiction over their admiralty action.

■ Ordinarily, the granting of declaratory judgment relief rests in the sound discretion of the trial court.[2] Considerations

---

1. Rule 9(h) is applicable to claims which may be brought in admiralty but which also fall within this court's jurisdiction on some other ground, and it permits the plaintiff to select at the outset whether his claim will be considered an admiralty claim by expressly identifying it as such.

2. *New York Guardian Mortgagee Corp. v. Cleland*, 473 F.Supp. 409, 418 (S.D.N.Y.1979) (and cases cited therein); 10 C. Wright & A. Miller,

generally bearing on the court's decision to exercise that discretion include: whether the judgment sought would settle the controversy between the parties; whether piecemeal litigation is the likely product of permitting the action for the declaratory judgment to go forward; the availability of another, more adequate remedy; the pendency of another action posing some or all the questions raised in the declaratory action; and whether there is an indication that entertaining the declaratory action would encourage a "race to the courthouse" style of litigation. Making federal declaratory relief available was not intended to enable one party to obtain a change of forum from a state to a federal court, nor to permit the use of a declaratory judgment action in federal court merely as a means of asserting what otherwise would be defenses to a claim brought in state court by the defendant in the federal declaratory action.[3]

■ The doctrines governing stays or dismissals of parallel state and federal actions are best developed in the context of diversity cases. Thus, the general rule accepted in this district is that the federal court should decline to exercise diversity jurisdiction over a declaratory judgment action when the same question of state law will be determined in a suit pending in state court.[4] The rule is based in part on considerations of judicial administration, since the declaratory judgment action often could not resolve the entire controversy between the parties, in part on a desire not to interfere with state court processes unnecessarily, and in part on fear that, in the context of insurance cases, the out-of-state insurance carrier may be using the declaratory judgment device to haul the parties to a tort action into federal court to try only a part of the entire controversy between them. There is also, however, an implied recognition that declaratory judgment actions are a special breed of lawsuit, intended to fill a gap in the remedies otherwise available but not to be substituted for the "real" thing when a coercive suit can be brought.

Though the doctrines are best developed in connection with diversity cases, the reasoning of the leading diversity cases [5] has been applied in situations where substantive federal law is involved.[6] Furthermore, although authorities dealing with declaratory judgments in the admiralty context are sparse in general, the court has discovered there is at least one reported case in which an admiralty action for declaratory relief was dismissed because the court found no useful purpose would be served in rendering a decision which could not afford complete relief among the parties when another action in a state forum was available which could do so.[7]

■ In light of the factors traditionally applied to determine whether a dismissal or a stay is appropriate, it is evident that proceeding with the instant declaratory judgment action at this time would serve no useful purpose. First, the present action probably would not settle the entire controversy between the parties. For example, Boles's state law claims for fraud and intentional infliction of emotional distress probably will not depend on the insurance contract's warranty provision. Second, the state court remedy is available and is adequate. There has been much discussion in the papers concerning the law which will apply to the insurance contract, with Boles

Federal Practice and Procedure: Civil § 2759 (1973).

3. See generally Brillhart v. Excess Ins. Co., 316 U.S. 491, 494–95, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620 (1942).

4. Allstate Ins. Co. v. Harris, 445 F.Supp. 847, 850–51 (N.D.Cal.1978).

5. E. g., Brillhart, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed.2d 1620.

6. See Will v. Calvert Fire Ins. Co., 437 U.S. 655, 664, 98 S.Ct. 2552, 2558, 57 L.Ed.2d 504 (1978) (plurality opinion); Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 818, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976).

7. Cia Aeolia De Naveg. S.A. Panama v. John T. Clark and Son of Boston, Inc., 250 F.Supp. 808, 809 (D.Mass.1964).

arguing that state law would govern anyway under relevant admiralty principles[8] and the companies contending state law would not necessarily apply, but there has been no indication of any conflicts between state law and the admiralty law the companies assert might control the issue. In fact, the most significant practical difference, aside from the location of the trial, which declining to exercise jurisdiction here would have is that Boles will be able to litigate before a jury. This brings up the third relevant consideration, the "race to the courthouse." The danger of encouraging a race to the courthouse as a means of depriving one or the other side of its ability to present its case to a jury especially concerns the court in these circumstances. The situation would be very different if the relief sought in admiralty were something more than a mere defensive declaratory judgment, or if the defendant in the declaratory action were not prepared to litigate a coercive action in state court. But the facts of this case appear to harbor tremendous potential for abuse of the availability of declaratory relief in federal admiralty courts. For this reason, the pendency of another action wherein the same questions of law are raised carries particular weight.

The companies have argued nevertheless that dismissal will deprive them of their historical right to proceed in admiralty. This plea must be considered in light of the fact that at least as recently as 1968 it has been held unequivocally that an admiralty court cannot grant declaratory relief.[9] Boles has not contended this court sitting in admiralty would be prohibited from granting declaratory relief, and the court is not presently persuaded it would lack the power to do so,[10] but it surely cannot be argued that declaratory relief has any deep historical roots in admiralty. Yet, in the absence of this remedy, the present action could never have been filed in the first place, and the companies would have been forced to await their being named defendants in a state court coercive suit. In short, the court is unable to discern any special considerations in admiralty which would prevent it from exercising the discretion regarding declaratory relief available in other situations, and the companies have cited no authority to that effect. As noted above, there is authority supporting the power of an admiralty court to dismiss a declaratory action due to the pendency of a parallel state action. Additionally, it is worth noting that this action, being one brought under Rule 9(h), is not one which falls within the exclusive jurisdiction of the admiralty court.

The court is, therefore, persuaded that the circumstances presented here—including the combination of (1) a defensive declaratory judgment action, (2) brought in admiralty pursuant to Rule 9(h) concerning an insurance contract, (3) which threatens the jury right the insured would otherwise enjoy, (4) would resolve only part of the dispute and (5) is duplicated in a comprehensive state court action—warrant its declining to exercise jurisdiction. This is a case in which dismissal without prejudice, as opposed to a stay of proceedings, is appropriate because all the claims raised in the complaint in this court are the subject of an adequate proceeding in the state court.

IT IS SO ORDERED.

8. Boles principally relies on the sometimes controversial case of *Wilburn Boat Co. v. Fireman's Ins. Co.*, 348 U.S. 310, 316, 75 S.Ct. 368, 371, 99 L.Ed. 337 (1955).

9. *Am. Mfrs. Mut. Ins. Co. v. Manor Inv. Co.*, 286 F.Supp. 1007, 1009 (S.D.N.Y.1968). *Cf.*

States Maine Lines, Inc. v. United States, 196 F.Supp. 562 (N.D.Cal.1960).

10. *See Ins. Co. of N. America v. Langan Constr. Co.*, 327 F.Supp. 567, 567–68 (S.D.Ala.1971).